```
                  UNITED STATES DISTRICT COURT
                    DISTRICT OF CONNECTICUT
```

MARLIN FIREARMS, CO.,            :

    Plaintiff,                   :

V.                               :     Case No. 3:09-CV-921 (RNC)

WILD WEST GUNS, LLC,             :

    Defendant.                   :

## RULING AND ORDER

In 2009, Marlin Firearms, Co. ("Marlin"), a rifle manufacturer in Connecticut, brought this action against Wild West Guns, LLC ("Wild West"), a custom gun shop in Alaska, seeking a declaratory judgment that Marlin's Model 1895SBL rifle, which has a large loop lever, does not infringe Wild West's trade dress intellectual property rights in its "Big Loop Lever."  Federal question jurisdiction was invoked based on the Lanham Act, 15 U.S.C. §§ 1501, et seq.  With regard to personal jurisdiction, Marlin alleged on information and belief that Wild West has transacted substantial business in Connecticut.  After receiving service of the complaint in Alaska, Wild West moved to dismiss the action for lack of personal jurisdiction.  In 2010, Judge Dorsey granted the motion finding that Marlin had failed to make a prima facie showing

of personal jurisdiction over Wild West under Connecticut's long arm statutes.  See Ruling On Motion to Dismiss (May 7, 2010)(ECF No. 23)(hereinafter "Ruling").  Judge Dorsey did not direct entry of judgment dismissing the action on the basis of his ruling but instead gave Marlin an opportunity to engage in jurisdictional discovery.  The discovery authorized by Judge Dorsey has been conducted, Marlin has filed a supplemental memorandum opposing dismissal, and Wild West has submitted a reply.  After considering the parties' post-discovery submissions in light of the entire record, I conclude that Marlin has not sustained its burden of demonstrating a basis for exercising personal jurisdiction over Wild West.

I. Facts

The following facts, which are accepted as true for purposes of this ruling, are either undisputed or supported by Marlin's submissions.[1]  For many years, Wild West

---

[1] After jurisdictional discovery, when no evidentiary hearing has been held, "the plaintiff's prima facie showing, necessary to defeat a jurisdiction testing motion, must include an averment of facts that, if credited by the trier, would suffice to establish jurisdiction over the defendant." Ball v. Metallurgie Hoboken-Overpelt, S.A., 902 F.2d 194, 197 (2d Cir. 1990).  Applying this standard here, plaintiff's uncontroverted allegations are accepted as true and any material factual conflicts disclosed by the affidavits are resolved in its favor.

2

purchased Marlin Model 1895 rifles from third party vendors, modified them in various ways, and sold the modified rifles as Wild West's "Alaskan CoPilot."  Wild West offered several custom options for its "Alaskan CoPilot," including the "Wild West Big Loop Lever."

In February 2008, Michael Jensen, acting in his capacity as Marlin's Vice President of Sales and Marketing, called Wild West to inquire about ordering sample large loop levers for use with Marlin's Model 1895 rifle.  He spoke with Jim West, who offered to sell large loop levers to Marlin for $55 each.  Mr. West subsequently sent an email to Mr. Jensen offering to sell 1,000 large loop levers to Marlin for $55 each and stating that Wild West would be sending a sample large loop lever for Marlin's review.  Wild West sent Mr. Jensen a sample large loop lever for Marlin Model 19895XLR with Wild West's logo on the trigger bow.  In March 2008, after reviewing the sample, Mr. Jensen ordered twelve large loop levers from Wild West.  In April 2008, Wild West sent twelve large loop levers to Marlin in Connecticut, along with an invoice for $660.

At a trade show in 2009, Marlin displayed a Model 1895XLR incorporating one of the large loop levers.  Wild

3

West's logo had been blasted off but remained visible. Marlin subsequently decided to market its Model 1895XLR with a large loop lever of its own, rather than using Wild West's large loop lever.  Marlin's marketing activities relating to this model came to the attention of Wild West.

In May 2009, Wild West's legal counsel in Alaska sent a cease and desist letter to Marlin in Connecticut stating that Marlin was infringing Wild West's intellectual property rights by selling the Model 1895SBL containing Wild West's proprietary Big Loop Lever.  The letter stated that Wild West had supplied Marlin with the Big Loop Lever in a good faith effort to facilitate a co-branding relationship, and that instead of co-branding with Wild West, Marlin had copied the Big Loop Lever design for its 1895 Model and introduced the 1895SBL as its own design.  The letter requested that Marlin either work with Wild West to get appropriate licensing or manufacturing agreements in place or provide assurances that it would stop using Wild West's products and designs.  The letter stated that unless Wild West received a positive response, it would bring a lawsuit against Marlin in Alaska.

In June 2009, Marlin's legal counsel in North Carolina

responded to the cease and desist letter.  The letter denied that Marlin was infringing Wild West's purported trade dress in a large loop lever or had otherwise abused the parties' relationship to gain an unfair advantage.  The letter stated that Wild West could not prove a claim of infringement because, among other things, Marlin's large loop lever was different from Wild West's design in several respects.  Two days later, Marlin filed this suit in Connecticut.

II. <u>Discussion</u>

In federal question cases, when the defendant resides outside the forum state, federal courts apply the forum state's personal jurisdiction rules if the applicable federal statute does not provide for nationwide service of process.  See <u>PDK Labs v. Friedlander</u>, 103 F.3d 1105, 1108 (2d Cir. 1997).  Because the Lanham Act does not provide for nationwide service of process, Connecticut's jurisdictional rules must be applied.  <u>Sunward Electronics, Inc. v. McDonald</u>, 362 F.3d 17, 22 (2d Cir. 2004).  This requires Marlin to demonstrate that a Connecticut statute authorizes the exercise of personal jurisdiction.  If Marlin satisfies this burden, the Court must then determine whether exercising jurisdiction over Wild West would comport with

due process.  See WorldCare Ltd. Corp. v. World Ins. Co., 767 F. Supp. 2d 341, 349 (D. Conn. 2011).

No Connecticut statute expressly applies to foreign limited liability companies.  Trial courts in Connecticut have considered whether actions against limited liability companies are governed by the long arm statute applicable to foreign corporations, Conn. Gen. Stat. § 33-929(f),[2] or the one applicable to nonresident partnerships, Conn. Gen. Stat. § 59-52(b).[3]  Judge Dorsey found it unnecessary to decide which of these statutes applies because he concluded that

---

[2] Conn. Gen. Stat. 33-929(f) provides: "Every foreign corporation shall be subject to suit in this state, by a resident of this state or by a person having a usual place of business in this state, whether or not such foreign corporation is transacting or has transacted business in this state . . ., on any cause of action arising as follows: (1) Out of any contract made in this state or to be performed in this state; (2) out of any business solicited in this state by mail or otherwise if the corporation has repeatedly so solicited business, whether the orders or offers relating thereto were accepted within or without the state; (3) out of the production, manufacture or distribution of goods by such corporation with the reasonable expectation that such goods are to be used or consumed in this state and are so used and consumed, regardless of how or where the goods were produced, manufactured, marketed or sold or whether or not through the medium of independent contractors or dealers; or (4) out of tortious conduct in this state, whether arising out of repeated activity or single acts, and whether arising out of misfeasance or nonfeasance."

[3] Conn. Gen. Stat. § 52-59b(a)(1) provides: "As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nonresident individual [or] foreign partnership . . . who in person or through an agent: (1) Transacts any business within the state."

neither one is satisfied in this case.

After Judge Dorsey issued his ruling, Judge Kravitz issued a carefully reasoned opinion predicting that the Connecticut Supreme Court would hold that actions against limited liability companies are governed by § 52-59b.  See Austen v. Catterton Partners V, LP, 729 F. Supp. 2d 548, 559 (D. Conn. 2010).[4]  I agree with Judge Kravitz's analysis and adopt it here.  See Lis v. Delvecchio, No. 3:11CV1507(AWT), 2012 WL 3309384, at *2 (D. Conn. Aug. 13, 2012)(adopting the reasoning in Austen); see also Unique Extrusions, Inc. v. Koehler-Bright Star, LLC, No. CV106003582, 2010 WL 3786533, at *4 (Conn. Super. Ct. Aug. 27, 2010) (Shorthall, J.) (concluding that § 52-59b applies to limited liability companies).  To sustain its burden, then, Marlin must show that the requirements of § 52-59b are met.

Marlin submits that jurisdiction is conferred by § 52-59b(a)(1), which provides long arm jurisdiction over a nonresident who "transacts any business within the state." This statute has two requirements: the nonresident must have transacted business in Connecticut and the cause of action

---

[4] Judge Kravitz rejected the proposition, urged by Wild West, that no Connecticut statute reaches foreign limited liability companies.

must arise from the nonresident's business activity in the state.  See Ryan v. Cerullo, 282 Conn. 109, 122 (2007).  I conclude that even assuming the first requirement is satisfied, the second is not.

The phrase "transacts any business" is not defined in the statute.  However, the statute has been construed to require some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws.  See Estate of Martinez v. Yavorcik, 455 F. Supp. 2d 115, 122 (D. Conn. 2006).  This test can be satisfied by "a single purposeful business transaction."  Zartolas v. Nisenfeld, 184 Conn. 471, 474 (1981).

The results of jurisdictional discovery conducted by Marlin show that Wild West has made sales to twenty-nine customers in Connecticut.  These activities provide some support a finding that Wild West has transacted business in Connecticut within the meaning of § 52-59b(a)(1).  See Ruocco v. Metro. Boston Hockey League, CV074024835S, 2007 WL 4635000, at *4 (Conn. Super. Ct. Dec. 7, 2007) (noting that a foreign corporation "transact[s] business in Connecticut where its state sales were not an isolated transaction of

modest proportions, but rather an indication that Connecticut was an important market for its product") (citation and internal quotations omitted).  Indeed, Wild West's sale of sample levers to Marlin pursuant to the parties' discussions about a potential co-branding relationship conceivably could suffice to satisfy the transacting business requirement.

Assuming arguendo that the first requirement of the statute is met, Marlin must also show that its cause of action arises from Wild West's business activity within the state.  To satisfy this requirement, there must be an "articulable nexus" or "substantial relationship" between Marlin's cause of action and Wild West's transaction of business in Connecticut.  Pearce v. Ashcroft, CIV.A. 301CV1160CFD, 2003 WL 1145468, at *3 (D. Conn. Mar. 12, 2003) (citing Henderson v. INS, 157 F.3d 106, 123 (2d Cir. 1998)).  The requisite nexus has not been established.

Judge Dorsey found that Marlin's cause of action arises from the cease and desist letter sent by Wild West's counsel in Alaska to Marlin in Connecticut.  I agree.  The complaint alleges that Wild West's cease and desist letter and statements by Wild West's counsel in a subsequent telephone

9

call initiated by Marlin's counsel have "created a cloud of uncertainty regarding Marlin's continued marketing and sales of its Model 1895SBL rifle with a large loop lever."  Comp. ¶ 18.  The complaint goes on to state that, "[t]hrough this action, Marlin seeks to clear the uncertainty created by [Wild West's] continuing threats, and to avoid the accrual of alleged damages [Wild West] claims are and will be owed if Marlin continues selling its Model 1895SBL rifle."  Id. Thus, Wild West's cease and desist communications are alleged to have created a sufficient controversy to warrant the issuance of a declaratory judgment of noninfringement.

No case has been found applying § 52-59b in the context of a defensive declaratory judgment action arising from a cease and desist letter.  However, the Second Circuit has addressed this very situation under New York Civil Practice Law § 302, which provided the model for § 52-59b.[5]  In Beacon Enterprises, Inc. v. Menzies, 715 F.2d 757 (2d Cir. 1983), the Second Circuit ruled that the defendant's mailing of a cease and desist letter to the plaintiff in New York, which provided the basis for the plaintiff's defensive declaratory judgment action, "[did] not constitute a

---

[5] See Zartolas, 184 Conn. at 474.

'transaction of business' within New York sufficient to support the exercise of section 302(a)(1) long-arm jurisdiction." Id. at 766.  The Court found it "difficult to characterize [the defendant's cease and desist] letter alleging infringement in an unspecified locale and threatening litigation in an unspecified forum as an activity invoking the 'benefits and protections' of New York law." Id.

Judge Dorsey concluded that Wild West's cease and desist letter does not provide a basis for personal jurisdiction in light of Beacon Enterprises.  See Ruling at 15.  I agree.  Compare Modern Computer Corp. v. Ma, 862 F. Supp. 938, 945 (E.D.N.Y. 1994) (sending a cease and desist letter into the forum is insufficient to support personal jurisdiction) with PDK Labs, Inc. v. Friedlander, 103 F.3d 1105, 1109 (2d Cir. 1997)(persistent enforcement efforts in the forum over a three month period constituted transacting business and thus supported personal jurisdiction).  See generally 4A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1069.1 n.15 (3d ed. 2013)(collecting cases arising from cease and desist letters and other correspondence).

In its supplemental opposition, Marlin contends that the cease and desist letter provides a sufficient basis for jurisdiction viewed in the context of Wild West's other contacts with Connecticut. To support specific personal jurisdiction, the additional contacts on which Marlin relies must bear some relationship to its cause of action. See Nusbaum & Parrino, P.C. v. Collazo De Colon, 618 F. Supp. 2d 156, 161 (D. Conn. 2009) ("The inquiry [under § 52-59b(a)(1)] focuses on the nature and quality of the contacts with Connecticut in connection with the matter in suit, rather than the number of Connecticut contacts.") (citation and internal quotations omitted). The additional contacts Marlin cites are unrelated to Wild West's effort to enforce its intellectual property rights. Because Marlin has failed to point to other activities by Wild West in Connecticut relating to enforcement of its intellectual property rights, the record does not provide a basis for exercising specific personal jurisdiction in this case. See Autogenomics, Inc. v. Oxford Gene Tech. Ltd., 566 F.3d 1012, 1021 (Fed. Cir. 2009)(in action seeking declaratory judgment of invalidity and noninfringement of patent, district court lacked personal jurisdiction over defendant because plaintiff

failed to allege sufficient activities by the defendant in the forum relating to validity and enforceability of the patent in addition to cease and desist communications).

Marlin argues that the requisite nexus between its cause of action and Wild West's business activity in Connecticut is provided by Wild West's sale and shipment of the sample levers.[6]  Marlin contends that but for the sale and shipment of the sample levers, and the subsequent cease and desist letter, this case would not have arisen.  As was true in Beacon Enterprises, however, Marlin does not allege that the sale and shipment were injurious, and Marlin's cause of action would exist even if the sale and shipment had never occurred.  See Beacon Enters., 715 F.2d at 765

---

[6] Marlin argues that it sustains its burden under Connecticut's jurisdictional rules if it shows "some connection" between its cause of action and the sale and shipment of the levers, citing Thomason v. Chemical Bank, 234 Conn. 281 (1995). In Thomason, the Connecticut Supreme Court construed the predecessor to the long arm statute applicable to foreign corporations.  The Court stated that the statute did not require a direct causal relationship between the plaintiff's cause of action and the defendant's contacts with the forum. See id. at 293.  Instead, it required only a nexus between the plaintiff's cause of action and the defendant's Connecticut contacts. See Tomra of N. Am., Inc. v. Envtl. Prods., Inc., 4 F. Supp. 2d 90, 93 (D. Conn. 1998).  Determining whether such a nexus exists requires inquiry "not only into the various elements of the plaintiff's cause of action, spelled out in the various subparts of subsection [(f)]," but also into "the totality of the defendant's conduct and connection with this state . . . to determine whether the defendant could reasonably have anticipated being haled into court here." Thomason, 234 Conn. at 291.

("The present controversy arose as a result of [defendant's] 'cease and desist' letter, not her New York commercial activity. Accordingly, we find no 'articulable nexus,' . . . between [defendant's] shipment of goods into New York and [plaintiff's] cause of action.")(citations omitted).[7] Moreover, I agree with Judge Dorsey that at the time Wild West sold and shipped the levers to Marlin, it was not reasonably foreseeable that, as a result of the sale and shipment, Wild West could be sued in Connecticut for a declaration of noninfringement. See Ruling 12-13 and n.4.

Marlin claims to have discovered evidence providing a "much stronger basis for concluding that, at a minimum, there is 'some connection' between Wild West's sale and shipment of large loop levers to Marlin in Connecticut and Marlin's declaratory judgment claims." Pl.'s Opp. at 5-6. Marlin relies on Wild West's response to an interrogatory

---

[7] The recent decision by the New York Court of Appeals in Licci v. Lebanese Canadian Bank, 20 N.Y.3d 327 (2012), does not provide a basis for concluding that Beacon Enterprises was wrongly decided. In Licci, a foreign bank allegedly financed terrorism by repeatedly using a correspondent bank account in New York to facilitate the wire transfer of millions of dollars to Hizballah, a terrorist organization. Id. at 331. Noting that the inquiry under § 52-59b is relatively permissive and that causation is not required, the court held that the statute conferred jurisdiction over the bank. Id. at 339-40. Unlike in Beacon Enterprises, however, the bank's forum contacts were injurious to the plaintiffs and had an articulable nexus with the plaintiffs' cause of action.

describing the sequence of events that led Wild West to send the cease and desist letter underlying this action.  The interrogatory response indicates that Wild West shipped the levers knowing Marlin was considering affixing them to Marlin's 1895 Model rifle.  Marlin submits that "it was in fact Wild West's sale and shipment of its own large loop levers to Marlin in Connecticut, and Marlin's alleged decision to advertise Model 1895 rifles bearing those Wild West large loop levers, that incited Wild West to send Marlin [the] cease and desist letter that ultimately led to this lawsuit."  Pl.'s Opp. at 3-4.

   As Wild West points out in its reply memorandum, the information Marlin relies on is not really new.  The sequence of events described in the interrogatory response is also laid out in the cease and desist letter, which Judge Dorsey had before him at the time of his ruling.  As summarized above, the letter states that Wild West shipped the large loop levers to facilitate a co-branding relationship and that Marlin copied Wild West's design without permission.  More fundamentally, Marlin's cause of action arises out of the cease and desist letter, not the sale and shipment.  See Holey Shoes Holdings, Ltd. v. Foam

15

Creations, Inc., No. 05 CIV. 6939(MBM), 2006 WL 1147963,*8 (S.D.N.Y. May 1, 2006).

Marlin relies on Judge Dorsey's decision in ICG America, Inc. v. Wine of the Month Club, Inc., No. 3:09-cv-133 (PCD) 2009 WL 2843261 (D. Conn. Aug. 28, 2009). In ICG, the nonresident defendant aggressively enforced its intellectual property rights by sending the resident plaintiff four cease and desist letters. In addition, the "[d]efendant promoted and sold its products to Connecticut residents through its website, specifically targeting them for repeat business through its e-mail campaigns." ICG, 2009 WL 2843261, at *5. Wild West sent one cease and desist letter to Marlin and its website is passive in that it provides information to potential buyers without offering an opportunity to buy. In his ruling, Judge Dorsey distinguished his decision in ICG on this basis. See Ruling at 13 n.5 ("In [ICG] . . . the Court found the totality of defendant's contacts sufficient to confer personal jurisdiction because the defendant's website was interactive and the defendant repeatedly solicited Connecticut residents by emailing them promotionals."). I agree with Judge Dorsey that ICG is clearly distinguishable.

16

Even if Marlin could satisfy its burden of showing that both requirements of § 52-59b are satisfied, exercising jurisdiction on the basis of the cease and desist letter would be contrary to circuit precedent regarding due process requirements. The Federal Circuit has adopted a rule precluding specific personal jurisdiction based on cease and desist letters alone. See Red Wing Shoe Co. v. Hockerson-Halberstadt,Inc., 148 F.3d 1355, 1360-61 (Fed. Cir. 1998).[8] Such letters are insufficient for personal jurisdiction, the Federal Circuit has held, because of fairness

---

[8] The Court applies Federal Circuit precedent in determining whether the exercise of jurisdiction over an out-of-state patent owner would offend due process. Potts v. Septic Heater Co., 632 F. Supp. 2d 190, 192 (D. Conn. 2009). As this case solely concerns trade dress, not patents, Second Circuit precedent is controlling. See, e.g., Tomra of N. Am., Inc. v. Envtl. Products Corp., 4 F. Supp. 2d 90, 94 (D. Conn. 1998). Nevertheless, I find that Federal Circuit precedent is persuasive authority. As another district court has noted in a trademark declaratory judgment action, "Federal Circuit law defines the personal jurisdiction inquiry in the intellectual property declaratory judgment context, and therefore it is helpful to consider it." See Sinclair v. StudioCanal, S.A., 709 F. Supp. 2d 496, 505 n.7 (E.D. La. 2010). Moreover, regardless of whether the intellectual property at issue concerns patents or trade dress, the due process inquiry is similar. See Nova Design Techs., Ltd. v. Walters, CIV.A. 10-7618, 2011 WL 5084566, at *7 (E.D. Pa. Oct. 25, 2011) (rejecting plaintiff's attempt "to distinguish Red Wing Shoe because that case involved patents rather than trademark licensing"); Tigerstripe Paintball, LLC v. Heckler & Koch, Inc., 1:09-CV-57-TC, 2010 WL 414471, at *4 (D. Utah Jan. 28, 2010) (applying Red Wing Shoe in a similar declaratory judgment action involving trade dress).

considerations:

> Principles of fair play and substantial justice afford a [patent holder] sufficient latitude to inform others of its patent rights without subjecting itself to jurisdiction in a foreign forum. A [patent holder] should not subject itself to personal jurisdiction in the forum solely by informing a party who happens to be located there of suspected infringement. Grounding personal jurisdiction on such contacts alone would not comport with principles of fairness [because it] would provid[e] disincentives for the initiation of settlement negotiations.

Id. at 1360-61. The Federal Circuit's rule has been criticized on various grounds. See Megan M. La Belle, Patent Litigation, Personal Jurisdiction and the Public Good, 18 Geo. Mason L. Rev. 43, 86 (2010). But it continues to be followed in patent and trademark cases, as well as a variety of other contexts. See, e.g., Kehm Oil Co. v. Texaco, Inc., 537 F.3d 290, 301 (3d Cir. 2008); Stroman Realty, Inc. v. Antt, 528 F.3d 382, 386-87 (5th Cir. 2008); Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme, 433 F.3d 1199, 1208 (9th Cir. 2006).

In its supplemental opposition, Marlin argues that even if this action does not arise out of Wild West's contacts with Connecticut, discovery shows that Wild West has sufficient contacts with Connecticut for purposes of

jurisdiction.  Pl.'s Opp. at 7 (citing <u>Helicopteros Nacionales de Columbia, S.A. v. Hall</u>, 466 U.S. 408 (1984)). Marlin thus suggests that the Court has general jurisdiction, which exists when the defendant has sufficient contacts with the forum to confer personal jurisdiction even though the cause of action has no relationship with those contacts.  <u>See</u> <u>id.</u> at 416.  Like the defendant in <u>Helicopteros</u>, Wild West has no office in Connecticut, nor any representatives located here, and although it has a website that ostensibly includes an "online store," the website is actually passive.  Its sales to Connecticut customers during the relevant period comprised only 0.7% of its total sales.  <u>See</u> <u>F&F Screw Prods., Inc. v. Clark Screw Mach. Prods. Co.</u>, CV000500360S, 2002 WL 31894843, at *6-7 (Conn. Super. Ct. Dec. 10, 2002) (defendant's direct sales to Connecticut customers, which constituted 0.6% of its $27,000,000 in total sales, were insufficient to exercise general jurisdiction).  And its telephone and email communications to and from Connecticut comprised only 1.2% and 0.2%, respectively, of its total communications.  Wild West's relatively limited contacts with Connecticut do not qualify as continuous and systematic general business

contacts supporting an exercise of general jurisdiction.

III. Conclusion

Accordingly, the Clerk will enter a judgment dismissing the case for lack of personal jurisdiction.

So ordered this 31st day of May 2013.

/s/ RNC
Robert N. Chatigny
United States District Judge
